Sylvia Claudette VASS, Individually and as the Administratrix and Personal Representative of the Estate of Michael D. Vass, Plaintiff,

v.

VOLVO TRUCKS NORTH AMERICA, INC., Volvo Logistics North America, Inc., and John Doe Volvo Corporation, Defendants.

No. CIV.A.1:03–2286.

United States District Court, S.D. West Virginia, At Bluefield.

April 20, 2004.

Robert B. Allen, Philip J. Combs, Allen Guthrie Mchugh & Thomas, Charleston, WV, for Plaintiff.

Gretchen M. Callas, Christopher D. Pence, Jackson Kelly, Charleston, WV, for Defendant.

James M. Cagle, Charleston, WV, James Mick Kessel, Stout Howard Billy & Seli, Richmond, VA, for Interested Party.

## ORDER GRANTING MOTION
## TO DISMISS

FABER, Chief Judge.

Before the court is a motion to dismiss pursuant to Rule 12(b)(6), brought by defendants Volvo Trucks North America and Volvo Logistics North America (collectively "Volvo") (Doc. No. 10). Volvo previously moved to dismiss on grounds of lack of personal jurisdiction and improper service (Doc. No. 6) and to transfer venue to the Western District of Virginia (Doc. No. 8). Judge Haden denied these prior motions on January 16, 2004, and transferred this action to this court on the same date (Doc. No. 23). Volvo's motion was filed on November 26, 2003; the plaintiff filed a response on December 15, 2003 (Doc. No. 14), and Volvo filed its reply on December 23, 2003 (Doc. No. 18). Accordingly, this matter is ripe for adjudication.

Volvo argues that the plaintiff's complaint fails to state a claim under the West Virginia wrongful death statute, W. Va. Code § 55–7–5, because Mr. Vass was injured within the geographic confines of Virginia as a result of conduct (the negligent loading of a truck) that also occurred within the geographic confines of Virginia. The plaintiff argues that the public policy exception to choice-of-law analysis requires application of the West Virginia statute here. Volvo responds that Virginia law is clearly applicable to these claims and that, in any event, public policy requires only that Virginia's contributory negligence rule not be applied to foreclose recovery by the plaintiff, not that the plaintiff be permitted

to proceed under the West Virginia statute. The parties' arguments raise a close question, and the court has determined that dismissal pursuant to Rule 12(b)(6) is proper.

## I. Factual Background

Because this matter is before the court on Volvo's motion to dismiss, the court construes the facts in the light most favorable to the plaintiff. On January 8, 2002, Michael D. Vass, a truck driver, left his home in Lindside, West Virginia, and traveled to Dublin, Virginia. In Dublin, Mr. Vass picked up a load of parts from one Volvo facility and transported those parts by truck to a Volvo storage facility located a few miles away, also in the vicinity of Dublin. Volvo employees negligently loaded Mr. Vass's truck. As a result, when Mr. Vass opened the door to the truck, the cargo fell and fatally injured him. Thereafter, Sylvia Claudette Vass brought this action in the Circuit Court of Kanawha County on Mr. Vass's behalf, seeking relief pursuant to the West Virginia wrongful death statute. Volvo removed the action to this court on October 28, 2003.

## II. Standard of Review

When reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, this court accepts as true the facts alleged in the complaint, views them in the light most favorable to the non-movant, and recognizes that dismissal is inappropriate unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts that could be proved in support of its claim. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Randall v. United States,* 30 F.3d 518, 522 (4th Cir.1994). A plaintiff must allege facts in the complaint that are sufficient to support the claimed legal con-

clusion. *See Migdal v. Rowe Price–Fleming Int'l, Inc.*, 248 F.3d 321, 326 (4th Cir. 2001). Although pleading requirements are liberal, "more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant." *Id.* (quoting 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed.1990)).

### III. Analysis

#### A. Choice of Law

 A federal district court sitting in diversity applies the choice-of-law rules of its forum state. *Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir.1999). West Virginia law applies the *lex loci delicti* ("place of the wrong") principle to law conflicts that present in tort cases. *See Paul v. National Life*, 177 W.Va. 427, 352 S.E.2d 550, 555 (1986). However, choice-of-law analysis "does not require the application of the substantive law of a foreign state when that law contravenes the public policy of this State." *Id.* at 556.

#### B. Public Policy Against Contributory Negligence

The West Virginia Supreme Court of Appeals abolished the contributory negligence defense in favor of a comparative negligence rule in *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979). Twenty years later, the court came to consider whether applying another state's contributory negligence rule in a West Virginia tribunal would violate West Virginia public policy. *See Mills v. Quality Supplier Trucking, Inc.*, 203 W.Va. 621, 510 S.E.2d 280 (1998). In *Mills*, the court addressed the following certified question from a state circuit court:

> In a wrongful death action pending in WV against a trucking company principally located in Ohio, which is based upon a claim that the trucking company negligently hired a driver who shot and killed a driver from West Virginia while in Maryland, does the substantive law of Maryland apply to the wrongful death action, including the defenses of contributory negligence and assumption of the risk?

*Id.* at 281. The court's response was, "Answer: West Virginia." *Id.* at 283.

The *Mills* court set up its analysis by noting that in the case at issue "the operative distinction between West Virginia and Maryland law is the application of the comparative negligence doctrine in West Virginia." *Id.* at 282. Because the contributory negligence rule was contrary to forum public policy, the court concluded: "we hold that West Virginia law should govern the resolution of the wrongful death issues in the case sub judice." *Id.* at 283. The court then added that "contributory negligence laws of foreign jurisdictions will not be enforced in the courts of this State." *Id.*

#### C. Analysis

 It is clear that West Virginia law prevents the application of Virginia's contributory negligence rule in the case at bar.[1] What is unclear is whether public policy requires the court to apply only West Virginia's comparative negligence rule, or whether the court should apply West Virginia substantive law to the plaintiff's entire claim. If only the comparative negligence rule applies, then the plaintiff has failed to state a claim upon which relief may be granted, as the substantive law of the place of wrong alleged by the plaintiff (Virginia) must otherwise apply to the resolution of this case. Obviously, the

---

1. The court takes judicial notice that the contributory negligence rule is still enforced by Virginia courts. *See, e.g., Ponirakis v. Choi*, 262 Va. 119, 546 S.E.2d 707, 710–11 (2001).

plaintiff has stated a valid claim if the court can grant relief under the West Virginia statute.

The precise import of *Mills* to these facts is somewhat unclear. The court wrote that West Virginia law should govern the claim "sub judice" and styled this ruling a "holding." *See Mills*, 510 S.E.2d at 283. Yet in the next sentence of its decision, the court wrote simply that West Virginia courts should not "enforce[ ]" contributory negligence laws from other jurisdictions. *See id.* Because the court began its analysis by noting that the substantive distinction between the application of West Virginia and Maryland law was the defense of contributory negligence, there is an inference that the decision only reached the issue of whether the contributory negligence defense should apply. *See Woodrum v. Johnson*, 210 W.Va. 762, 559 S.E.2d 908, 912 (2001) ("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound.") (quoting *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)). Under such a view, the plaintiff's complaint would fail to state a claim, as the law of Virginia clearly applies to the plaintiff's allegations under this state's *lex loci* analysis.

Moreover, such a view would be consistent with prior decisions from the West Virginia high court. In *Chase v. Greyhound Lines, Inc.* the decedent was involved in a fatal car accident in Pennsylvania that was caused by the negligence of her son. The plaintiff brought suit in West Virginia. *See Chase v. Greyhound Lines, Inc.*, 156 W.Va. 444, 195 S.E.2d 810, 812 (1973), *overruled on other grounds, Lee v. Comer*, 159 W.Va. 585, 224 S.E.2d

721 (1976). The court noted at the outset that Pennsylvania law should govern the plaintiff's claim because the plaintiff's death had occurred within that state. *See id.* at 813 ("The wrongful death complained of in this action occurred in Pennsylvania. The wrongful death statutes of that Commonwealth, therefore, govern the substantive law applicable to this case unless barred by our public policy."). The deceased plaintiff's husband had brought suit against the son on behalf of himself and on behalf of the family's children. *See id.* at 814. The law of Pennsylvania, unlike that of West Virginia (at the time), did not provide immunity from suits brought between parents and minor children.[2] *See id.* Thus, the court had to decide whether the father could proceed against the minor son on a claim grounded in the foreign state's law, even though the public policy of West Virginia was to not allow claims between parents and unemancipated minors. *See id.* at 815.

The *Chase* court ruled that the father could maintain his action in West Virginia, but that he could only do so for the benefit of the family's children. *See id.* at 818. The father could not himself recover because suits between parents and children violated this state's public policy. *See id.* Critically, the court then analyzed whether the plaintiff could recover funeral expenses. *See id.* Although West Virginia allowed for the recovery of such expenses as damages, Pennsylvania law limited funeral expenses to the beneficiary who had paid them or was liable for them. *See id.* The father had paid the expenses, so under Pennsylvania law only the father could recover for them; at the same time, West Virginia law prevented a suit brought on behalf of the father. *See id.* The court

---

**2.** Three years later, in 1976, the Supreme Court of Appeals partially overruled *Chase* and abrogated parental immunity. *See Lee v.*

*Comer*, 159 W.Va. 585, 224 S.E.2d 721, 724 (1976).

ruled that the plaintiff could not recover the expenses: under the substantive law of Pennsylvania only the father had a right to recover, and that right could not be entertained in a West Virginia court. *See id.* at 819. The court's rationale was thus that the law of the place of the wrong governed the right to recover, but that any foreign law that violated West Virginia public policy would not be applied.

Under this reasoning, the plaintiff's complaint fails to state a claim because the law of the place of the wrong alleged by the plaintiff (Virginia) must necessarily govern the plaintiff's claim. The limitation counseled by *Chase* would apply to make elements of Virginia law, such as the contributory negligence defense, inapplicable if they violate West Virginia public policy. Had the *Chase* court intended to simply substitute West Virginia law for dissimilar Pennsylvania law because of public policy differences in other areas, then it would have relied upon the West Virginia wrongful death statute to allow the plaintiffs to recover the funeral expenses. Instead, the *Chase* court allowed only the recovery that was granted by Pennsylvania law, and limited Pennsylvania law to comport with West Virginia public policy. Yet, the *Mills* decision appears to command the application of the West Virginia wrongful death statutes to the case "sub judice."

Or does it? The pertinent syllabus point from *Mills* provides, "Application of the doctrine of contributory negligence, barring a plaintiff's recovery if that plaintiff is guilty of any negligence, violates the public policy of this State; accordingly, contributory negligence law of foreign jurisdictions will not be enforced in the courts of this State." *Mills v. Quality Supplier Trucking, Inc.,* 203 W.Va. 621, 510 S.E.2d 280, 280 (1998) (syllabus point 3). The pertinent syllabus point from *Chase* provides:

The immunity from action between parent and child does not extend to and bar an action for wrongful death instituted in the courts of this State by a parent, as the personal representative of his deceased spouse, against his unemancipated child to recover damages only in behalf of other children of his deceased spouse, siblings of the defendant, where the death occurred in another state which by statute created a cause of action accruing directly to the benefit of such children of the deceased, and where under the law of the state in which the cause of action arose it is maintainable although the defendant child is barred from participation in any recovery of damages; the personal representative parent, however, although a member of the class of beneficiaries designated by statute in the state in which the cause of action arose as being entitled to recover damages in a wrongful death action, is barred from participation in any recovery by the public policy of this state which prohibits actions between parent and child.

*Chase v. Greyhound Lines, Inc.,* 156 W.Va. 444, 195 S.E.2d 810, 811 (W. Va.1973) (syllabus point 3), *overruled on other grounds, Lee v. Comer,* 159 W.Va. 585, 224 S.E.2d 721 (1976). The Supreme Court of Appeals has counseled that any new points of law it pronounces will be carried in syllabus points. *See Walker v. Doe,* 210 W.Va. 490, 558 S.E.2d 290, 291 (2001) (syllabus point 2); *accord State ex rel. Med. Assurance of W. Va., Inc. v. Recht,* 213 W.Va. 457, 583 S.E.2d 80, 94 (2003).

Therefore, although there is language in the *Mills* opinion that could be read to command the application of West Virginia law to the plaintiff's claims in their entirety, this language is appropriately regarded as dicta. The binding holding of *Mills* is that a foreign contributory

negligence law will not be enforced, and this is especially apparent in light of the fact that the *Mills* court began its discussion by noting that the "operative distinction" between the two states' laws was the application of the contributory negligence rule. *See Mills,* 510 S.E.2d at 282. Although *Chase* was subsequently overturned as to its parent-child immunity holding, *see Lee v. Comer,* 159 W.Va. 585, 224 S.E.2d 721, 724 (1976), the portion of the decision providing that the law of the place of the wrong governs the plaintiff's right of recovery, subject to limitations drawing from this state's public policy, remains good law. When the two cases are read together, the result is that Virginia law should govern the plaintiff's wrongful death claim, but that Virginia's contributory negligence rule should not be applied in order to comport with West Virginia's public policy in favor of comparative fault.

This approach is consistent with other courts' treatment of contributory negligence laws that violate their own public policy. For example, in 1977 the Supreme Court of Arkansas considered whether the contributory negligence defense should apply to a suit brought in Arkansas on account of an accident that had occurred in Missouri. *See Wallis v. Mrs. Smith's Pie Co.,* 261 Ark. 622, 550 S.W.2d 453, 455 (1977). Missouri law still applied the contributory negligence defense, but Arkansas law applied a comparative fault rule. *See id.* at 455–56. After noting that the *lex loci* rule controlled choice-of-law analysis in Arkansas (as in West Virginia), *see id.* at 457, the court determined that applying Missouri's contributory negligence bar would violate Arkansas public policy, *see id.* at 458. The court wrote: "We therefore find this State has a predominate interest in applying its comparative fault statutes to its own citizens and those who seek relief in its courts. For equally compelling reasons we find Missouri rules of

the road are applicable to questions of alleged negligence in the actual driving of the vehicle." *Id.* (internal citations omitted). That is, the law of the place of the wrong (Missouri) would govern the plaintiff's claim generally, but the specific element of Missouri law that violated forum public policy (the contributory negligence bar) would not be applied in favor of forum law. Another case providing similar reasoning is *Judge Trucking Co. v. Estate of Cooper,* Nos. 92C–03–041, 93C–04–023, 1994 WL 164519 (Del.Super.Ct. Apr. 14, 1994).

The court thus concludes that the correct application of West Virginia choice-of-law principles is that the law of the place of the wrong (Virginia) controls the plaintiff's claim, subject to West Virginia's comparative fault rule.

### IV. Conclusion

For the reasons detailed in this opinion, the court concludes that the plaintiff's averred claim under the West Virginia wrongful death statute fails as a matter of law. Accordingly, defendant Volvo's motion to dismiss pursuant to Rule 12(b)(6) is hereby GRANTED. Having recently granted the plaintiff leave to file an amended complaint and having granted the defendants leave to file a third-party complaint, the court further grants the plaintiff leave to amend the complaint to state a wrongful death claim pursuant to Virginia law. Accordingly, the plaintiff shall have thirty (30) days from the date of this order to file an amended complaint.

The Clerk is directed to send copies of this Order to all counsel of record.